Filed 1/28/14  P. v. Lexington Nat. Ins. Corp. CA/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEXINGTON NATIONAL INSURANCE CORPORATION,<br><br>    Real Party in Interest and Appellant. | A136832 & A137178<br><br>(San Mateo County<br>Super. Ct. Nos. CIV517513 &<br>SC070207C) |

**I.**

**INTRODUCTION**

Real party in interest Lexington National Insurance Corporation (Lexington) appeals from the denial of its petition for relief from bond forfeiture (Pen. Code,[1] § 1308), and from summary judgment entered in favor of respondent.  Lexington had posted a bail bond in the amount of $120,000 for the defendant in a criminal case pending against him in the San Mateo County Superior Court.  When the defendant failed to appear for trial, the trial court ordered the bond posted by Lexington forfeited.  Summary judgment was later entered in favor of the forfeiture.

Lexington appeals from both rulings, claiming that the notice it received of the forfeiture was constitutionally defective.  We disagree, and conclude that the recent opinion by Division Three of this appellate district in *People v. Accredited Surety & Casualty Co., Inc.* (2013) 220 Cal.App.4th 1137 (*Accredited Surety*) is dispositive of

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

Lexington's claims here.  Accordingly, we affirm the trial court's orders and resulting judgment.

## II.

### FACTUAL AND PROCEDURAL BACKGROUNDS

On or about February 4, 2011, Lexington posted a bail bond in the amount of $120,000 for Xi Jin Huang in a criminal case pending against Huang in San Mateo County Superior Court Case No. SC070207C.  Apparently, Huang had been charged in that case with violations of Health and Safety Code sections 11358 and 11359 (cultivation and possession of marijuana), and section 498, subdivision (d) (theft of utility services).  The bond was to secure Huang's appearance in court on July 11, 2011.

Huang failed to appear on July 11, 2011, and the trial court declared Lexington's bond forfeited, issued a bench warrant for Huang, and increased his bail to $200,000.  A "Notice of Order Forfeiting Bail" was sent to Lexington on August 2, 2011, that read as follows:  "You are hereby notified that Bail Bond No. ZZ8007, in the sum of $120,000.00 was forfeited on 07/11/11.  Defendant having failed to appear for Jury Trial."

On January 31, 2012, Lexington filed a motion to extend the time for bail forfeiture, which was granted by the trial court, extending the time to August 14, 2012.  Thereafter, Lexington filed a motion to vacate forfeiture and to exonerate the bond, which was opposed by respondent.  The motion was heard and denied on September 28, 2012.  Lexington filed a notice of appeal from that order on October 15, 2012.  That appeal was later assigned case number A136832 by this court.

A civil action number was then assigned to the matter of the bail forfeiture in San Mateo County Superior Court Case No. CIV517513, and summary judgment concerning the forfeiture was entered on October 23, 2012, by order granted on October 17, 2012.  Notice of this summary judgment was served on Lexington on October 23, 2012.  Lexington filed a notice of appeal from the summary judgment on November 26, 2012, which was later assigned case number A137178 by this court.  At Lexington's request,

2

these two appeals were ordered consolidated by order dated January 23, 2013 (Ruvolo, P. J.).

Briefing on appeal was completed with the filing of Lexington's reply brief on August 16, 2013. However, on October 28, 2013, Division Three of this court filed and published its opinion in *Accredited Surety*, *supra*, 220 Cal.App.4th 1137. By letter dated November 19, 2013, we invited the parties to file supplemental briefs "addressing the applicability of the recently published opinion by Division Three of this court in *Accredited Surety*[, *supra*,] filed on October 28, 2013, to the issue raised by this appeal." Supplemental briefing was completed on December 19, 2013. The remittitur in *Accredited Surety* issued on January 3, 2014.

## III.

## DISCUSSION

Lexington's claim on appeal is that the notice of forfeiture sent to it by the San Mateo County Superior Court on August 2, 2012, did not comply with section 1305 because that notice did not notify Lexington of its right to seek relief from the forfeiture and the time limits applicable to seeking such relief, citing *People v. Swink* (1984) 150 Cal.App.3d 1076, 1081 (*Swink*), and *Minor v. Municipal Court* (1990) 219 Cal.App.3d 1541, 1549-1550 (*Minor*). As a result, Lexington contends the trial court lacked jurisdiction to order the forfeiture.

The identical issue raised by Lexington in this appeal was similarly raised and rejected in *Accredited Surety*.[2] In that case, Accredited Surety posted a bail bond for one Ji Liang Cheng who subsequently failed to appear for sentencing, causing the bond to be

---

[2] One issue raised in *Accredited Surety* which has not been raised by Lexington is Accredited Surety's argument that the summary judgment order was void because it was entered after the time allowed by section 1306. Division Three concluded that, although untimely, the order was voidable and not void, and Accredited Surety's actions in contesting the summary judgment on the merits estopped it from raising an objection to the timeliness of the order. (*Accredited Surety*, *supra*, 220 Cal.App.4th at pp. 1145-1146, 1151.)

3

forfeited.[3]  On appeal, Accredited Surety claimed that the notice it received from the superior court, which was identical to the notice issued in this case to Lexington, was constitutionally inadequate under *Swink* and *Minor*, because it failed: (1) to cite the statutory provisions under which the forfeiture was being declared, (2) to cite what relief from forfeiture was available to Accredited Surety, and (3) to state the time limits for seeking relief from the forfeiture.  (*Accredited Surety*, *supra*, 220 Cal.App.4th at pp. 1141-1142.)  The court did not dispute the holdings of either *Swink* or *Minor*, or the United States Supreme Court case of *Memphis Light, Gas & Water Div. v. Craft* (1978) 436 U.S. 1, underpinning those holdings.  However, Division Three distinguished all three cases on the important fact that each involved notices to laypersons and not to business entities engaged in the bail bond business:  "These cases, on which [Accredited] Surety relies, all involved the sufficiency of notice to laypersons, who presumably were unaware of the statutory procedures for obtaining relief.  These same cases recognize that the ultimate question in determining whether a given notice satisfies due process is whether, under the particular circumstances, the notice is reasonably calculated to inform the recipient of the process by which the recipient may challenge the governmental action in question.  [Citation.]"  (*Accredited Surety*, *supra*, 220 Cal.App.4th at pp. 1143-1144.)

The court went on to note that Accredited Surety was a licensed insurer and professional surety which routinely worked within framework of section 1305 in issuing and enforcing bail bonds, and thus, was presumably familiar with the timing and methodology for seeking relief from forfeitures.  For this reason, the cases relied on by Accredited Surety to attack the sufficiency of the notice it received were distinguishable, and the notice was adequate to meet due process standards.  (*Accredited Surety*, *supra*, 220 Cal.App.4th at pp. 1144-1145.)

---

[3]  Coincidentally, the trial court involved in *Accredited Surety* was the San Mateo County Superior Court, Cheng and Huang were codefendants in the same criminal case, and Surety was represented on appeal in that case by the same attorney representing Lexington here.

4

In its supplemental briefs in this case, Lexington essentially concedes that if we accept the analysis in *Accredited Surety*, it is dispositive of the issue raised by Lexington. However, it argues that holding was "amiss," and we should not adhere to a legal rationale that does not do justice "to the notions [of] fairness and due process," later referring to the factual distinction found so important by the court in *Accredited Surety* between laypersons and professional surety companies as "a fallacy or judicial fiction." Essentially, it argues that bail bond agencies are not a collective, cohesive entity, but an amalgam of bail agents some of whom are quite educated and experienced while others are "novices" who cannot be fairly charged with knowing what recourse is available to their respective companies in the event of a default by a criminal defendant.

The court in *Accredited Surety* at least implicitly rejected this very same argument. It noted that Accredited Surety was a professional surety company that routinely worked with the bond forfeiture statute (section 1305), as evidenced by the very language of the bond itself: "Indeed, the bond which [Accredited] Surety issued in this case explicitly provides, 'If the forfeiture of this bond be ordered by the court, judgment may be summarily made and entered forthwith against the said ACCREDITED SURETY AND CASUALTY COMPANY, INC., a Florida Corporation, for the amount of its undertaking herein *as provided by Sections 1305 and 1306 of the Penal Code.*' (Italics added.)" (*Accredited Surety*, *supra*, 220 Cal.App.4th at p. 1145.)

This is the same, identical language that appears in the bond issued by Lexington in this case. Moreover, the bond agent here was not simply Lexington, but its attorney in fact, Desoto-Liberty Bail Bonds, a company with offices in Healdsburg and San Francisco, and a licensed bail bond agency.[4] Indeed, at no time, either in connection with the motion to extend the time for bail forfeiture, or to vacate the forfeiture and exonerate the bond, did Lexington or Desoto-Liberty personnel state that they were unfamiliar with remedies available to them to seek relief from the forfeiture, or the time within which

_____

[4] The bond itself identifies Desoto-Liberty as possessing license no. 1398114 "Court Division."

such remedies must be invoked.  In fact, the motion to extend the time for bail forfeiture made by Lexington, was filed by Desoto-Liberty itself through its bail agent, Terry Fowler.  The points and authorities submitted by Fowler and Desoto-Liberty in support of that motion specifically reference both the remedy of setting aside a bond forfeiture and the time within which such relief may be sought.

In light of all of the foregoing, we agree with the rationale of our colleagues in Division Three in *Accredited Surety*, and fully accept the distinction noted in the case law between laypersons posting bail for others, and professional bail bond issuers such as Lexington and Surety.  (See also *Swink*, *supra*, 150 Cal.App.3d at p. 1082; *Minor*, *supra*, 219 Cal.App.3d at pp. 1550-1551.)  Therefore, we similarly reject Lexington's arguments to the contrary, and conclude that the notice it received regarding the bond forfeiture was not constitutionally defective.  Therefore, the trial court acted within its jurisdiction in ordering Lexington's bond in the sum of $120,000 forfeited, and in granting summary judgment to respondent.

## IV.
## DISPOSITION

The order declaring Lexington's bond in the sum of $120,000 forfeited is affirmed, as is the summary judgment resulting from that order.  Costs on appeal are awarded to respondent.

_____

RUVOLO, P. J.


We concur:


_____

RIVERA, J.


_____

HUMES, J.